IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL SMITH,                          )
                                        )
        Petitioner,                     )
                                        )        Civil Action No.
        v.                              )        2:17cv270-MHT
                                        )           [WO]
UNITED STATES OF AMERICA,               )
                                        )
        Respondent.                     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Michael Smith's ("Smith") motion to vacate, set aside, or correct

sentence under 28 U.S.C. § 2255.  CIV Doc. # 1.[1]  Upon review, the court concludes that

Smith's § 2255 motion should be denied without an evidentiary hearing.

## I.  BACKGROUND

The case against Smith arose from the August 2010 beating death of Rocrast Mack,

an Alabama inmate at the Ventress Correctional Facility ("Ventress"), at the hands of three

Ventress correctional officers, including Smith, a lieutenant at the prison.  The other

correctional officers implicated in the incident pled guilty to various charges, while Smith

went to trial on civil-rights charges involving Mack's death and the subsequent cover-up.

---

[1] References to document numbers assigned by the Clerk in this civil action, Civil Action No.
2:17-CV-270-MHT, are designated as "CIV Doc. #."  References to document numbers assigned
by the Clerk in the underlying criminal case, Case No. 2:12-CR-48-MHT, are designated as "CR
Doc. #."  Pinpoint citations are to the page of the electronically filed document in the court's
CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the
document presented for filing

In June 2013, a jury found Smith guilty of two counts of deprivation of civil rights resulting in bodily injury and death, in violation of 18 U.S.C. § 242; one count of obstruction of justice for persuading others to engage in misleading conduct, in violation of 18 U.S.C. § 1512(b)(3); two counts of obstruction of justice for misleading conduct, in violation of 18 U.S.C. § 1512(b)(3); one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k); one count of obstruction of justice for falsifying documents, in violation of 18 U.S.C. § 1519; and one count of making false statements to the FBI, in violation of 18 U.S.C. § 1001.

On November 4, 2013, following a multiday sentencing hearing, the district court sentenced Smith to 30 years in prison, consisting of 30 years for each of the two civil-rights counts and 20 years for each remaining count, all terms to run concurrently. The district court entered its judgment on November 22, 2013.

Smith appealed, claiming the district court erred by (1) denying his motion to suppress his post-incident statements, which he argued were protected under *Garrity v. New Jersey*, 385 U.S. 493 (1967); (2) denying his request for a hearing as provided in *Kastigar v. United States*, 406 U.S. 441 (1972); and (3) imposing a procedurally unreasonable sentence based upon the misapplication of the sentencing guidelines. CIV Doc. # 9-23.

On April 29, 2016, the Eleventh Circuit issued an opinion rejecting Smith's arguments and affirming his convictions and sentence. *United States v. Smith*, 821 F. 3d 1293 (11th Cir. 2016). Smith filed a petition for writ of certiorari with the United States Supreme Court, which denied certiorari review on January 9, 2017. CIV Doc. # 9-25.

2

On April 26, 2017, Smith, acting *pro se*, filed this § 2255 motion asserting the following claims:

1. Trial counsel was ineffective for failing to challenge the sufficiency of the evidence to support Smith's convictions.

2. Counsel was ineffective for failing to object to or move to strike Smith's post-incident statements to Alabama investigatory agencies based on *Garrity v. New Jersey*, 385 U.S. 493 (1967).

3. Counsel was ineffective for failing to call favorable witnesses at trial.

4. Counsel was ineffective for failing to have Scottie Glenn's testimony excluded.

5. Counsel was ineffective for failing to object to the district court's misleading and vague jury instructions.

6. Counsel was ineffective for failing to seek mitigation at sentencing.

7. Counsel was ineffective for failing to seek a preliminary hearing.

8. Counsel was ineffective for failing to challenge the grand jury pool.

9. Counsel was ineffective for failing to request a competency hearing for Smith.

10. Counsel was ineffective for failing to consult with Smith before filing the appeal.

11. The district court erred in denying Smith's pretrial motions under *Garrity* and *Kastigar v. United States*, 406 U.S. 441 (1972).

12. The district court erred by refusing to give a jury instruction on manslaughter.

CIV Doc. # 1 at 4–8; CIV Doc. # 1-1 at 6–18.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is considered constitutionally ineffective if (1) his "performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would

4

not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted).

Under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *see Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To establish ineffective assistance of appellate counsel, a movant must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker[.] Generally, only when ignored issues are clearly stronger than those presented, will the

presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1.   *Failure to Challenge Sufficiency of Evidence*

Smith claims his trial counsel was ineffective for failing to challenge the sufficiency of the evidence to support his conviction. *See* CIV Doc. # 1 at 6; CIV Doc. # 1-1 at 11–12. Smith's claim has no basis in fact, as the record reflects Smith's trial counsel moved for a judgment of acquittal at the close of the Government's case, arguing that the evidence was insufficient on all charges against Smith (CR Doc. # 621 at 134–39), and that counsel renewed the motion for judgment of acquittal at the close of all the evidence (CR Doc. # 636 at 126–28). Because Smith's counsel moved for a judgment of acquittal challenging the sufficiency of the evidence, Smith fails to show deficient performance by counsel.

Further, Smith's argument here does not explain in what way the Government's evidence was insufficient to support his convictions. Instead, Smith seems to assert that the alleged deficiencies of his lawyers prevented him from proving his innocence. *See* CIV Doc. # 1-1 at 12. According to Smith, had his counsel "moved the Court to enter legal evidence . . . that should have been sought by the defense" and "brought forth all eyewitness accounts and [taken] into consideration the mental condition of [Smith], the conviction could NOT be supported by sufficient evidence." *Id*. Smith then says that, "had Defense Counsel done an effective and adequate investigation, it would have been pristinely clear to the Jury that the Petitioner lacked the Mens Rea to have committed this act[.]" *Id*. However, Smith does not show what information would have been obtained from further investigation by his counsel or how it would have produced a different outcome in the

proceedings. *See Palmer v. Clarke*, 408 F.3d 423, 445 (8th Cir. 2005) (the defendant could not show "prejudice," because he failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome of the trial, and instead, rested on "general allegations"). Moreover, Smith fails to show—and does not try to show—how, when the evidence is viewed in the light most favorable to the Government, there was insufficient evidence to support his conviction on the charges against him. *See United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (quotation omitted) ("In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."). Consequently, Smith fails to show that his counsel's actions resulted in any prejudice.

For the reasons discussed above, Smith is entitled to no relief on this claim of ineffective assistance of counsel.

### 2. *Failure to Object to "<u>Garrity</u> Statements"*

Smith claims his counsel was ineffective for failing to object to or move to strike his post-incident statements to Alabama investigatory agencies based on *Garrity v. New Jersey*, 385 U.S. 493 (1967). CIV Doc. # 1-1 at 5, 12–13.

Under *Garrity*, "a public employee may not be coerced into surrendering his Fifth Amendment privilege by threat of being fired or subjected to other sanctions." *United States v. Vangates*, 287 F..3d 1315, 1320 (11th Cir. 2002). If a state threatens an employee with termination unless he provides a statement in the course of an internal investigation,

it may not use that statement against the employee in any criminal proceeding or prosecution. *See id*. at 1320–21.

Before trial, Smith's counsel filed a motion to suppress arguing that Smith's post-incident statements to State of Alabama investigatory agencies—the Alabama Department of Corrections' Investigative & Intelligence Division ("I&I") and the Alabama Bureau of Investigation ("ABI")—were compelled under threat of job loss, and had been used against Smith by the Federal Bureau of Investigation ("FBI") in a subsequent federal investigation of the incident, in violation of *Garrity*.  CIV Doc. # 9-2.  Smith's counsel also moved for a hearing under *Kastigar v. United States*, 406 U.S. 441 (1972), arguing that the Government was required to prove that all of the evidence it intended to present at trial was derived from independent sources and was not tainted by the illegal use of Smith's compelled statements.  CIV Doc. # 9-3.

After holding an evidentiary hearing (*see* CIV Doc. # 9-4), the magistrate judge issued two reports recommending that the district court deny Smith's motions (CIV. Docs. # 9-6 and 9-7).  Among other things, the magistrate judge found that some of Smith's statements were not protected by *Garrity* because they were not compelled; that Smith was not entitled to a *Kastigar* hearing because the I&I and ABI investigations were free of any *Garrity* taint; that the federal prosecutors and FBI agents did not have access to any compelled/protected statements before Smith signed a consent form waiving his *Garrity* rights; and that Smith voluntarily, knowingly, and intelligently waived his *Garrity* rights as to his prior compelled statements during an interview with the FBI.  *Id.*

After the magistrate judge recommended that Smith's *Garrity* and *Kastigar* motions be denied, Smith's counsel objected and continued to seek suppression of his statements. CIV Doc. # 9-8. The district court overruled Smith's objections, adopted the magistrate judge's reports, denied Smith's motion to suppress, and rejected Smith's request for a *Kastigar* hearing. CIV. Doc. # 9-9. Smith's counsel pursued the *Garrity* issue with the district court during trial, reiterating Smith's opposition to the use of his statements against him. CR Doc. # 619 at 258–59, 262. The *Garrity/Kastigar* claims were pursued in Smith's direct appeal.

By his present § 2255 claim, Smith has again made an allegation with no basis in fact. As recounted above, Smith's counsel pursued the *Garrity* issue throughout the proceedings. Because Smith's counsel persistently objected to use of his *Garrity* statements, Smith fails to demonstrate deficient performance by his counsel. Smith suggests no other plausible argument that counsel should have made in seeking suppression of his *Garrity* statements. Thus, he also fails to show how he was prejudice by his counsel's actions. For these reasons, then, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   *Failure to Call Favorable Witnesses*

Smith claims his counsel was ineffective for failing to call several favorable witnesses at his trial. CIV Doc. # 1 at 4; CIV Doc. # 1-1 at 6–9. According to Smith, his counsel refused his request that the defense present testimony from Officer David Brooks

and seven Ventress inmates,[2] who, Smith says, "possessed eyewitness accounts of the incident which would have given [him] the opportunity to substantiate his credibility." CIV Doc. # 1-1 at 6–9.

"The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel." *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991). Complaints about uncalled witnesses are disfavored. *Sanders v. United States*, 314 F. App'x 212, 213 (11th Cir. 2008). "This is especially true because allegations of what a witness would have testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice prong of *Strickland*." *Jones v. McNeil*, WL 1758740, at *6 (S.D. Fla. 2009). "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

<u>Officer Brooks</u>

According to Smith, Officer Brooks would have testified regarding statements he allegedly overheard from Scottie Glenn (a correctional officer at Ventress who pled guilty to participating in the cover-up of the incident) and Matthew Davidson (a Ventress correctional officer who pled guilty to participating in the incident and cover-up). CIV Doc. # 1-1 at 6–7. Glenn testified as a cooperating Government witness at Smith's trial,

---

[2] Smith identifies the seven inmates as Henry Saldana, Raphael Henderson, Steven Kirkley, Roderick Farrier, Donovan Rogers, Robert Jones, and Robert Blanchard. CIV. Doc. # 1-1 at 6.

where Smith's counsel thoroughly cross-examined him regarding his prior statements and his post-incident conversations with Davidson. CR Doc. # 617 at 181–311; CR Doc. # 618 at 16–76, 92–105, 108–09. Smith's counsel specifically asked Glenn about his conversation with Davidson that took place outside the courthouse in Barbour County before the Barbour County grand jury (CR Doc. # 618 at 102–03) and his conversation with Davidson that took place after Glenn's first interview with the FBI (CR Doc. # 618 at 40–41). Thus, Smith's counsel elicited testimony about conversations Glenn had with Davidson, the matters about which Smith says Officer Brooks could have testified. Officer Brooks's testimony would have been cumulative. "Counsel is not required to present cumulative evidence or evidence incompatible with the defense strategy." *Rhode v. Hall*, 582 F.3d 1273, 1287 (11th Cir. 2009).

Furthermore, Smith does not show that what might have amounted to hearsay testimony from Officer Brooks would have been admissible, or exculpatory. Smith's assertion that Officer Brooks would have testified favorably is speculative. He presents no testimony or affidavits from Officer Brooks averring that he would testify in a manner consistent with Smith's present assertions. Thus, Smith has not demonstrated that his counsel's failure to call Officer Brooks prejudiced him. His self-serving speculation that Officer Brooks's testimony would have been favorable will not sustain his ineffective assistance claim. *Ashimi*, 932 F.2d at 650.

### Uncalled Ventress Inmates

Smith says the seven uncalled inmate witnesses would have testified about their observations of other Ventress correctional officers, including Melissa Brown, beating

Rocrast Mack.  CIV Doc. # 1-1 at 6–7.  Numerous correctional-officer witnesses testified regarding the beating of Mack by correctional officers in the dorm and on the yard.  CIV Doc. # 617 at 109–312; CIV Doc. # 618 at 6–109, 133–290; CIV Doc. # 619 at 4–18, 53–175; CIV Doc. # 620 at 126–259; CIV Doc. # 621 at 4–82.  The testimony that Smith says the uncalled inmate witnesses would have given would have been cumulative of testimony given by these testifying correctional officers.

Further, as the Government observes in its response to this claim, the uncalled inmate witnesses could only have provided accounts of events in the dorm and on the yard.  The testimony that Smith says the inmates would have given would have concerned no other locations where events were alleged to have occurred, because no inmates were present at the other locations.  The testimony of the inmates would therefore have had limited impeaching effect on the testimony of **(1) Glenn**—regarding (a) Smith's striking of Mack with a baton on his arms, legs, and head in the lieutenant's office (CIV Doc. # 617 at 148-49); (b) Smith breaking the baton on Mack's head in the lieutenant's office (CIV Doc. # 617 at 151–52); and (c) Smith stomping on Mack's head three times in the Ventress emergency room (CIV Doc. # 617 at 166); **(2) Ventress Correctional Officer William Cost**—regarding Smith's assault of Mack in the emergency room (CIV Doc. # 620 at 139–41, 163–64); and **(3) Ventress Nurse Coy Flenory**—regarding Mack walking into the emergency room, and after Smith departed the emergency room, Mack was unconscious with no brain activity (CIV Doc. # 621 at 104, 111–12).

As with his claim regarding Officer Brooks, Smith's assertion that the inmate witnesses would have testified favorably is speculative.  Smith presents no testimony or

affidavits from the inmates averring that they would have testified in a manner consistent with Smith's present assertions.  For this reason and the other reasons discussed above, Smith fails to demonstrate that his counsel's failure to call the inmate witnesses prejudiced him.  Thus, he cannot sustain his ineffective assistance claim.

## Counsel's Professionally Reasonable Decision

Furthermore, Smith fails to show that his counsel's decision not to call these witnesses to testify was professionally unreasonable.  Choices of strategy by defense counsel will be held ineffective only if they are so patently unreasonable that no competent lawyer would have chosen them.  *See Adams v. Wainwright*, 709 F.2d 1443, 1145 (11th Cir. 1983).  According to Smith, his counsel did not call Officer Brooks as a witness "because of the uncertainty" of what Officer Brooks's testimony would be, and did not call the inmate witnesses because "they were inmates" and counsel "didn't think the jury would believe them" as inmates.  CIV Doc. # 1-1 at 6–7.  As for counsel's decision not to call Officer Brooks, "it is generally ill-advised to ask a question at trial to which you do not know the answer."  *Prevatte v. French*, 459 F. Supp. 2d 1305, 1349 (N.D. Ga. 2006).  As for counsel's decision not to call the inmate witnesses, "a defense attorney's sense of the jury's reaction to testimony or evidence is a sound basis on which to make strategic decisions."  *Spaziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994).  Moreover, in an affidavit filed with this court, Smith's former counsel states that the inmate witnesses were interviewed by members of the defense team before trial and were found to have information that would have been unfavorable to Smith.  CIV Doc. # 6 at 2.  Smith's counsel had solid reasons for deciding not to call Officer Brooks and the inmate witnesses

to testify.  Smith, therefore, also fails to satisfy the deficient-performance prong of the *Strickland* standard.

Having established neither deficient performance by counsel nor prejudice, Smith cannot prevail on this claim of ineffective assistance of counsel.

### 4.   *Failure to Have Glenn's Testimony Excluded*

Smith argues that his counsel was ineffective for failing to have Scottie Glenn's testimony excluded "due to Glenn admitting he had already given fourteen statements in which he lied."  CIV Doc. # 1 at 4.

In an affidavit addressing this claim, Smith's counsel states he is "unaware of any grounds which would have precluded [Glenn] from testifying."  CIV Doc. # 6 at 2.  Smith cites no authority justifying the exclusion of Glenn's testimony.   Impeachment of a witness's testimony—not exclusion of the testimony—is the proper method to address a witness who has previously provided inconsistent statements.  *United States v. Sheffield*, 992 F.2d 1164, 1168 (11th Cir. 1993) ("Evidence of a witness' prior inconsistent statement has long been recognized as proper impeachment because the inconsistency between the witness' prior statement and the in-court testimony casts doubt on the reliability of both statements.").

The record reflects that Smith's counsel vigorously impeached Glenn on cross-examination with Glenn's numerous prior inconsistent statements and then emphasized these inconsistencies to the jury in closing argument.  CR Doc. # 617 at 181–311; CR Doc. # 618 at 16–76, 92–105, 108–09; CR Doc. # 636 at 167, 170, 179.  And during his own direct testimony, Smith testified, contra Glenn, that he did not intentionally strike Rocrast

Mack in the head with a baton or kick him in the head in the lieutenant's office; that he did not direct Joseph Sanders or any other correctional officers to beat Mack with the baton in the lieutenant's office; that he did not stomp on Mack's head in the Ventress emergency room; and that he did not direct the other correctional officers to cover up Mack's beating in their reports or interviews.  CR Doc. # 636 at 27, 32, 35, 42, 44.

It cannot be said that the performance of Smith's counsel, in concluding that the best way to handle Glenn's prior inconsistent statements was by impeachment through cross-examination, was professionally unreasonable.   Smith presents no meritorious ground upon which his counsel might have successfully argued to exclude testimony from Glenn.  Counsel cannot be ineffective for failing to raise a claim that would fail.  *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).  Smith has not demonstrated that his counsel's performance was deficient or that he was prejudiced by counsel's performance.  This claim of ineffective assistance of counsel entitles Smith to no relief.

### 5.   *Failure to Object to District Court's Jury Instructions*

Smith claims his counsel was ineffective for failing to object to the district court's "misleading [and] vague" jury instructions.  CIV Doc. # 1-1 at 16–17.  He says the court's instructions "failed to list the necessary elements to substantiate the actual crime [he] was to be tried upon."  *Id.* at 16.

Smith does not point to a specific jury instruction he considers misleading, vague, or inadequate.  The record reflects that the district court's jury instructions properly listed the elements necessary for the jury to convict Smith on the crimes he was tried for.  *See*

15

CR Doc. # 393; CR Doc. # 636 at 190–215.  During the charge conference, Smith's lawyers stated certain objections to the proposed instructions, including a request for an instruction on a misdemeanor deprivation-of-civil-rights offense.  CR Doc. # 636, at 103–04, 108–10, 120–26.

Smith's claim that the district court's jury instructions were misleading, vague, and inadequate is conclusory and unsupported by any argument or citation to a particular allegedly deficient instruction.  Smith fails to show that his counsel's performance was deficient, and he does not show that he suffered any prejudice.  He is entitled to no relief on this claim of ineffective assistance of counsel.

### 6.    *Failure to Seek Mitigation*

Smith claims his counsel was ineffective for failing to seek mitigation at sentencing "through any advisory guidelines along with any other 18 U.S.C. § 3553 factors" and for failing to "object to any enhancement."  CIV Doc. # 1-1 at 14–15.

Smith's claim notwithstanding, the record reflects that Smith's counsel did in fact seek mitigation at sentencing as well as objecting to the imposition of various sentencing enhancements.  Before the sentencing hearing, Smith's counsel moved for a downward departure and downward variance on Smith's behalf, identifying nine grounds for a below-the-guidelines sentence.  *See* CIV Doc. # 9-12.  Smith's counsel also filed a sentencing memorandum presenting a detailed account of Smith's personal history, family background, financial history, mental-health disabilities, work history, and challenging work conditions at Ventress.  CIV Doc. # 9-13.  The sentencing memorandum also set forth objections to the presentence investigation report ("PSI") and argued grounds for a

downward departure and downward variance.  *Id.* at 35–54.  In support of the mental-health arguments in the sentencing memorandum, Smith's counsel filed a neuropsychological report.  CIV Doc. # 9-15.  In support of the arguments about Smith's challenging work conditions, counsel filed an affidavit by Stjepan Mestrovic.  CR Doc. # 518.  And counsel filed numerous exhibits supporting arguments made in the defense's sentencing memorandum.  CIV. Docs. 527, 543, 552, 553.

At the sentencing hearing, Smith's counsel presented mitigation testimony from ten witnesses and other mitigation evidence supporting the motions for a downward departure and variance.  CIV. Doc. # 9-16 at 69–217; CIV Doc. # 9-17 at 23–198; CIV. Doc. # 9-18 at 137–206; CIV. Doc. # 9-19 at 70–109.  The ten testifying witnesses included Smith's wife and two of Smith's cousins.  CIV. Doc. # 9-19 at 70–109.  As noted above, Smith's counsel also objected to numerous sentencing enhancements and argued for a sentence lower than provided in the advisory guidelines range.  *Id.* at 105–06, 181–203, 209–224.  Counsel's mitigation arguments and presentation of mitigation evidence resulted in the district court granting Smith a downward variance at sentencing—from a sentence of life imprisonment to a sentence of 30 years' imprisonment.  *See* CIV Doc. # 9-21 at 23–24, 30.

Smith does not point to any mitigation evidence that counsel was ineffective for failing to present.  Therefore, he fails to establish deficient performance by counsel.  He further fails to demonstrate prejudice.  He does not show that the district court would have sentenced him to a lower sentence absent his counsel's allegedly deficient performance.  Consequently, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.   *Failure to Seek Preliminary Hearing*

17

Smith claims his counsel was ineffective for failing to seek a preliminary hearing. CIV Doc. # 1-1 at 15.

A grand jury returned an indictment against Smith on March 8, 2012.  CIV. Doc. # 9-1.  Smith was not entitled to a preliminary hearing, because he was indicted.  *See* Fed.R.Crim.P. 5.1(a)(2) ("If a defendant is charged with an offense other than a petty offense, a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted.").  Because there was no basis for Smith's counsel to request a preliminary hearing, Smith cannot prove that his counsel's performance was deficient.  Counsel cannot be ineffective for failing to raise a claim that would fail.  *Chandler*, 240 F.3d at 917; *Winfield*, 960 F.2d at 974.  Consequently, Smith is entitled to no relief on this claim.

### 8. *Failure to Challenge Grand Jury Pool*

Smith claims his counsel was ineffective for failing to challenge the grand jury pool on the ground it was not lawfully drawn, summoned, or selected," in violation of the Jury Selection Service Act ("JSSA"), 28 U.S.C. § 1861, et seq.  CIV Doc. # 1-1 at 15–16.  As discussed below, Smith provides no basis upon which a challenge to the grand jury pool would have succeeded if raised by his counsel.

Pursuant to the JSSA, "it is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the district or division wherein the court convenes."  28 U.S.C. § 1861.  The core requirement of the JSSA is that district courts "place into operation a written plan" designed to protect this right.  28 U.S.C. § 1863(a).  "By its terms, the JSSA provides remedies only for a 'substantial failure to

comply' with its requirements." *United States v. Carmichael*, 560 F.3d 1270, 1277 (11th Cir. 2009) (quoting 28 U.S.C. § 1867(d)).

A JSSA violation is considered "substantial" when it frustrates one of the three principles underlying the Act: (1) random selection of juror names; (2) from a fair cross-section of the community; and (3) use of objective criteria for determination of disqualifications, excuses, exemptions, and exclusions. *United States v. Gregory*, 730 F.2d 692, 699 (11th Cir. 1984).

To satisfy the prejudice prong of *Strickland*'s ineffective assistance analysis, Smith must establish there is a reasonable probability that, but for his counsel's failure to move the court for a JSSA challenge to the grand jury, the result of the proceeding would have been different.  This requires that Smith bring forth evidence demonstrating a reasonable probability that the district court would have, or should have, granted a motion for a JSSA challenge to the grand jury if Smith's counsel had presented such a motion to the court. *See Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000).  Smith has failed to carry this burden.

Smith's conclusory allegation that the grand jury in his case was not lawfully drawn fails to support his ineffective-assistance-of-counsel claim.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that conclusory or unsupported allegations cannot support an ineffective-assistance-of-counsel claim).  Smith provides no evidence, or suggestion, that the grand jury pool or grand jury selection plan for this district violates the JSSA.  He therefore fails to demonstrate that, had his counsel presented a challenge to compliance with the JSSA, the outcome of the case would have been different.  *See*

*Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (holding counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have succeeded). Smith is entitled to no relief on this claim of ineffective assistance of counsel.

### 9.   *Failure to Request Competency Hearing*

Smith claims his counsel was ineffective for failing to request a competency hearing "in relation to [his] extreme emotional and mental disturbances caused during the incident itself." CIV Doc. # 1 at 5; CIV Doc. # 1-1 at 9–11.

According to Smith, "it is pristinely clear and apparent from the record that [he] had no rational or factual understanding of the charges he was entering or the consequences of his trial." CIV Doc. # 1-1 at 10–11. Smith maintains that he suffered from a "fading and diminishing mental capacity caused during the incident itself" and asserts that "the record reveals numerous indicators that should have led counsel to pursue a more comprehensive mental health investigation." *Id* at 11.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnson v. Singletary*, 162 F.3d 630,

637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)).

"This standard of proof is high; and 'the facts must positively, unequivocally, and clearly

generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at

1106). To actually prevail on such a claim, the petitioner must prove by a preponderance

of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637

n.7; *see also Battle*, 419 F.3d at 1298–99; *Medina,* 59 F.3d at 1106.

In his affidavit addressing this claim, Smith's former counsel avers that he was

unaware of any information that would have supported a finding of Smith's incompetence.

CIV Doc. # 6 at 2–3. And the record is clear that Smith had the capacity to—and appeared

to—fully understand the proceedings against him and that he participated meaningfully in

those proceedings, including by testifying at trial. *See* CR Doc. # 636 at 2–112. Smith

fails to present facts that positively, unequivocally, and clearly generate a legitimate doubt

about his competency to assist in his defense and stand trial. The record indicates that

Smith has a mental health history of low-level depression, and at the time of trial he had

issues with depression and anxiety due to the criminal charges against him. *See* CIV Doc.

# 9-15. However, Smith's depression and anxiety in relation to the death of Rocrast Mack,

and the resulting legal consequences, are not enough to create a "real, substantial and

legitimate doubt" as to whether he was competent to stand trial. *See United States v.

Teague*, 956 F.2d 1427, 1432 (7th Cir. 1992) (finding that "major depression, generalized

anxiety disorder and borderline personality disorder are not psychiatric problems that

would prevent a defendant from understanding the proceedings against him and interfere

with his ability to confer with his attorney on his own behalf"); *Wright v. Sec'y, Dep't of*

*Corr.*, 278 F.3d 1245, 1258–59 (11th Cir. 2002) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.").  Additionally, Smith fails to point to any bizarre or questionable conduct on his part that should have evinced mental incompetency to his counsel or led his counsel to question his competency.  *See Teague*, 956 F.2nd at 1432.  Because Smith fails to satisfy his burden, he is entitled to no relief based on his claim that his counsel was ineffective for failing to request a competency hearing before trial.

### 10.   *Failure to Consult Prior to Appeal*

Smith claims his appellate counsel was ineffective for failing to consult with him before filing his appeal.  CIV Doc. # 1 at 4, 5, 9.

In an affidavit addressing this claim, Smith's appellate counsel states she met with Smith about his appeal and informed him he "could not raise ineffective assistance of counsel claims on direct appeal," which is something Smith says he wanted to do.  CIV Doc. # 3 at 1.  By his otherwise cursory allegations in his § 2255 motion, Smith fails to show he was prejudiced by his counsel's alleged failure to consult with him before his appeal.  Smith's failure to demonstrate prejudice forecloses any collateral relief based on this claim of ineffective assistance of counsel.

## C.   **Procedurally Barred Claims**

### 1.   *Denial of Motions Under <u>Garrity</u> and <u>Kastigar</u>*

Smith claims the district court erred in denying his pretrial motions under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Kastigar v. United States*, 406 U.S. 441 (1972).

CIV Doc. # 1 at 8; CIV Doc. # 1-1 at 18–19.  Smith raised this claim on direct appeal, where it was addressed and rejected by the Eleventh Circuit.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal."  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).  If a claim has previously been raised on direct appeal and decided adversely to a defendant, it cannot be relitigated in a collateral attack under § 2255.  *See Nyhuis*, 211 F.3d at 1343.  Smith cannot relitigate this claim, which has already been decided against him by the Eleventh Circuit in his direct appeal.  The claim is procedurally barred from further review.

### 2. *Refusal to Give Jury Instruction on Manslaughter*.

Smith claims the district court erred by refusing to give a jury instruction on manslaughter.  CIV Doc. # 1-1 at 17–18.  This claim is procedurally defaulted because Smith did not raise the issue on direct appeal.

Ordinarily, where a substantive claim is not advanced on direct appeal, it is deemed procedurally barred in a § 2255 proceeding.  *See McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011); *Reece v. United States*, 119 F.3d 1462, 1467 n.9 (11th Cir. 1997); *Mills v. United States*, 36 F.3d 1052, 1055–56 (11th Cir. 1994).  A petitioner can avoid this procedural bar by showing both cause for failing to raise the claim on direct appeal and actual prejudice arising from that failure.  *See United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Mills*, 36 F.3d at 1055.  To satisfy the "cause" exception to a procedural default, a petitioner "must show that some objective factor external to the defense prevented [petitioner] or his counsel from raising his claim on direct appeal and that this factor cannot

be fairly attributable to [petitioner's] own conduct." *Lynn*, 365 F.3d at 1235.  To establish that the cause of the procedural bar actually caused prejudice, a petitioner must show, "not merely that the error[ ] [claimed] created a possibility of prejudice, but that [it] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Although afforded an opportunity to do so (*see* CIV Doc. # 10), Smith has asserted no grounds as cause for his failure to raise this claim on direct appeal.  Consequently, the cause-and-prejudice exception does not prevent application of the procedural bar to this defaulted claim.

A colorable claim of actual innocence may also provide a gateway to review of an otherwise procedurally barred claim.  *Lynn*, 365 F.3d at 1234; *see House v. Bell*, 547 U.S. 518, 538 (2006); *Frady*, 456 U.S. 152 at 167–68.  A petitioner asserting actual innocence as a gateway to review of a procedurally barred claim must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998).  "[This] standard is demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538.  The Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at

trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Smith makes only perfunctory claims of his actual innocence, none of which point to new reliable evidence of his factual innocence.  *See* CIV Doc. # 1-1 at 4, 11–12.  At most, his claims of innocence amount to rearguing and reinterpretation of the trial evidence, which he asserts did not support his convictions.  *Id*.  Allegations regarding the sufficiency of and/or weight afforded the trial evidence do not constitute "new reliable evidence" of a petitioner's actual innocence.  *See Rutledge v. Neilsen*, 2012 WL 3778987, at *7 (M.D. Ala. 2012).  Because, Smith points to no new reliable evidence to support his claim of actual innocence, the actual-innocence exception provides no gateway to review of his procedurally defaulted claim.

Finally, even if Smith's claim was not procedurally defaulted, it would entitle him to no relief.  He was not charged with manslaughter for the death of Roscrast Mack.  He was charged with two counts of deprivation of civil rights resulting in bodily injury and death, in violation of 18 U.S.C. § 242.[3]  Manslaughter is not a lesser-included offense of

---

[3] Title 18 § 242 provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon,

this civil rights violation.  Smith can point to no caselaw establishing otherwise.  Therefore, Smith cannot prevail on the merits of a claim that the district court erred by refusing to give a jury instruction on manslaughter.

### III.   CONCLUSION

Accordingly, for the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Smith be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before April 13, 2020.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error

---

explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 242.

or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R.

3-1.  *See Stein v. Lanning Securities, Inc*., 667 F.2d 33 (11th Cir. 1982*).  See also Bonner*

*v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 30th day of March, 2020.


   /s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE